IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–00114–REB–KMT

JOHN SAUNDERS,

     Plaintiff,

v.

J.M. WILNER, individually and in his official capacity as Warden, at the Federal Correctional
Institution - Florence; and,
DAVE GRUDERS, individually and in his official capacity as the Religious Coordinator at the
Federal Correctional Institution - Florence,

     Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Kathleen M. Tafoya**
**United States Magistrate Judge**

     This case involves claims that Defendants violated Plaintiff's rights under the First

Amendment and the Religious Freedom Restoration Act (hereinafter "RFRA").  This matter is

before the court on "Defendants' Motion to Dismiss." ([Doc. No. 17] [filed April 20, 2009]

[hereinafter "Mot."].)  Plaintiff filed the Response on June 15, 2009.  ([Doc. No. 29] [hereinafter

"Resp."].)  Defendants filed their Reply on June 24, 2009.  (Doc. No. 35.)  This motion is ripe

for review and recommendation.  Plaintiff has filed suit pursuant to *Bivens v. Six Unknown*

*Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Jurisdiction is premised upon

28 U.S.C. § 1331 (2009).

**STATEMENT OF THE CASE**

The following facts are taken from Plaintiff's Prisoner Complaint ([Doc. No. 3] [filed January 22, 2009] [hereinafter "Compl."]) and the parties' submissions with respect to this Recommendation.  Plaintiff is a federal prisoner incarcerated at the United States Federal Correctional Institution in Florence, Colorado (hereinafter "FCI").  (Mot. at 1.)  Plaintiff brings claims against Defendant J.M. Wilner, FCI Warden (hereinafter "Wilner"), and Defendant Dave Gruders, FCI Religious Coordinator (hereinafter "Gruders"), in their individual and official capacities.  (Compl. at 1.)

Plaintiff states that he is a "devoted practitioner of the Eckankar Religion." (*Id.* at 4.) Plaintiff maintains that "Eckankar is a . . . religion based on group meditation and quiet chanting," whose "primary focus is on group meditation."  (*Id.* at 4–5.)  Plaintiff asserts that his religion "cannot be practiced by a sole practitioner," and that "[m]ultiple people must . . . participate in the group and meditation ceremonies." (*Id.* at 6 [emphasis in original].)  Plaintiff states that religious practice in a group setting is "mandated by the Eckankar religion."  (*Id.*)

Plaintiff alleges that in January 2007, he submitted a formal request to Defendants Wilner and Gruders seeking permission "to gather [with other inmates] in the religious complex (or any other area) at FCI-Florence to openly practice the Eckankar religion."  (*Id.* at 5.)  Plaintiff claims "the named defendants" denied this request.  (*Id.*)  Plaintiff asserts that "each and every month thereafter, through the date of filing this complaint, the plaintiff has requested permission from the named defendants to use the religious services area to gather and practice the Eckankar religion," but that "all of [his] requests were denied by Defendants Wilner and Gruders." (*Id.*)

2

Plaintiff states that he "personally" spoke with Defendants Wilner and Gruders in November 2008, and "attempted to sway them into allowing him and other Eckankar followers to use '<u>any</u>' public room at FCI-Florence for their group meditation."  (*Id.* at 6 [emphasis in original].)  Plaintiff states "[t]he answer was 'No.'"  (*Id.*)  Plaintiff claims that "[he] and his religious beliefs[] have been restricted to his individual cell at FCI-Florence."  (*Id.*)

Plaintiff's Claims One and Two appear to be based on the same set of factual allegations, though they allege distinct constitutional violations.  In Claim One, Plaintiff maintains Defendants' refusal to allow him to gather, meditate and openly practice the Eckankar faith with other inmates "denied [him] the right to practice his religion at FCI-Florence," in violation of his rights under the free exercise clause of the First Amendment.  (*Id.* at 4–5.)  In Claim Two, Plaintiff asserts Defendants' refusal to afford a suitable location within FCI for him and others to practice the Eckankar religion also violated his First Amendment free exercise rights.  (*Id.* at 6.)

In Claim Three, Plaintiff alleges that practice of the Eckankar religion requires a "Spiritual Leader."  (*Id.* at 7.)  Plaintiff asserts that there are "no religious personnel currently employed by the consolidated complexes at Florence [that] have any experience or training in the Eckankar religion."  (*Id.*)  Plaintiff states there are qualified Eckankar Spiritual Leaders in the communities surrounding FCI who are willing to volunteer their time and services to the inmates at FCI who wish to participate in Eckankar religious services.  (*Id.*)  Plaintiff alleges that "during the last year . . . the named defendants have repeated[ly] rejected [his] request[s] that a qualified Eckankar Spiritual leader be . . . allowed to lead the group of inmates in the Eckankar religion at FCI."  (*Id.*)  Plaintiff maintains the Defendants' refusal to allow a Spiritual Leader to

3

lead Eckankar religious services at FCI denied him the opportunity to "practice and participate" in his religion, in violation of his First Amendment rights.  (*Id.* at 8.)

In a brief attached to the Complaint, Plaintiff states that "the Religious Freedom Restoration Act encompasses all claims of prisoners alleging interference with the free exercise of religion." (*Id.* at 12–13.)  Reviewing the Complaint liberally, as this court must under *Trackwell v. United States*, the court construes this an assertion of claims against Defendants Wilner and Gruders pursuant to the RFRA on the basis of the factual allegations contained in Claims One, Two and Three.[1] [2]  *See* 472 F.3d 1242, 1243 (10th Cir. 2007).

---

[1] The court declines to analyze Plaintiff's claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") as suggested by Defendants.  (Mot. at 4–5.)  First, Plaintiff has not asserted his claims under RLUIPA—a fact acknowledge by Defendants.  (*Id.*)  Moreover, Defendants rely on *Hammons v. Saffle*, 348 F.3d 1250 (10th Cir. 2003), a case that does not stand for the proposition that a plaintiff's free exercise claims against federal officials should or must be analyzed under RLUIPA.  In fact, *Hammons* involved a state prisoner whose claims were not cognizable under RFRA.  *City of Boerne v. Flores*, 521 U.S. 507 (1997).  To the contrary, the Tenth Circuit has held that RFRA is applicable to the federal government. *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001).  Indeed, it appears that RLUIPA was enacted in order to provide legislative protection of religious exercise against State action, filling the void left by the Supreme Court's invalidation of RFRA as applied to the States in *City of Boerne v. Flores*, 521 U.S. at 534–35 (1997).  *See Rocky Mountain Christian Church v. Bd. of Co. Com'rs*, 612 F. Supp. 2d 1163, 1171 (D. Colo. 2009).  In any event, the analysis under either statute is nearly identical given the issues presented in this case and is of no consequence to the court's recommendation.

[2] Plaintiff's brief also alleges that he was denied "the use of religious books and . . . items specific to the Eckankar faith," as well as "the right to a diet conforming to the Eckankar beliefs." (Compl. at 14.)  The plaintiff sets forth absolutely no factual predicate for these conclusory statements and does not attribute a specific claim number designation.  Therefore, this court concludes that these allegations are not separately stated or supported claims in their own right.

Plaintiff seeks injunctive relief, compensatory damages and costs and fees associated with this litigation. (*Id.* at 10.)  Specifically, Plaintiff requests the court order Defendants: 1) to authorize and sanction the religious practice of the Eckankar Religion at FCI; 2) to make available a room in the "chapel" suitable for the practice of the Eckankar Religion at least one evening per week, for at least one hour; and 3) to authorize a Spiritual Leader of the Eckankar faith to visit and lead the inmate Eckankar spiritual group at least once per month.  (*Id.*)

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds: 1) Defendants are entitled to sovereign immunity against all official capacity claims; 2) Defendants are entitled to qualified immunity against all individual capacity claims; 3) the Prison Litigation Reform Act (hereinafter "PLRA") bars Plaintiff's claims for compensatory damages; 4) Plaintiff has failed to allege either Defendant's personal participation in the alleged misconduct; and 5) Plaintiff has failed to exhaust administrative remedies pursuant to the PLRA.[3]  (Mot. at 1.)

---

[3] Defendants have attached 76 pages of exhibits, including numerous BOP grievances and responses, with their Motion to Dismiss.  The court notes the exhibits were not Bates labeled or paginated in any way to assist the court with referring to exhibits cited by Defendants in their Motion.  Further, the court may not consider documents or other evidence outside the Complaint in deciding a motion filed under Rule 12(b)(6) without converting it to a Rule 56 motion for summary judgment.  *Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956, 961 (10th Cir. 2001) *rev'd on other grounds*.

**STANDARD OF REVIEW**

*1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell*, 472 F.3d at 1243 (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

*2.*     ***Fed. R. Civ. P. 12(b)(1) - Lack of Subject Matter Jurisdiction***

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1) (2007).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that

6

the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580

(10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only

exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must

dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is

lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A Rule

12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint,

without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d

674, 677 (10th Cir. 1971).  A court's consideration of evidence outside the pleadings, including

affidavits, will not convert the motion to dismiss to a motion for summary judgment under Rule

56.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  The burden of establishing

subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.

Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction

to hear his claims.

**3.      *Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court "need not accept conclusory allegations without supporting factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1940. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1949 (citation omitted). "Where a complaint

8

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

*1.    Exhaustion*

Defendants contend that Plaintiff failed to exhaust administrative remedies because he

"did not file grievances at each level of administrative review complaining of misconduct by

each defendant – by name, by position, or by function." (Mot. at 14.)  Prior to filing this civil

action, Plaintiff was required to exhaust administrative remedies pursuant to the PLRA.  *Booth v.*

*Churner*, 532 U.S. 731, 741 (2001).  In order to exhaust administrative remedies, prisoners must

complete the administrative review process defined by the prison grievance process.  *See Jones*

*v. Bock*, 549 U.S. 199, 218 (2007).  "The level of detail necessary in a grievance to comply with

the grievance procedures will vary from system to system and claim to claim, but it is the

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

However, "inmates are not required to specially plead or demonstrate exhaustion in their

complaints."  *Id.* at 216.  Rather, "the burden of proof for the exhaustion of administrative

remedies in a suit governed by the PLRA lies with the defendant."  *Roberts v. Barreras*, 484

F.3d 1236, 1241 (10th Cir. 2007).

Applying *Jones*, the Tenth Circuit has noted that it must be clear from the face of the

complaint that an inmate failed to exhaust available administrative remedies before the district

court may dismiss the claim for failure to exhaust.  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223,

1225 (10th Cir. 2007).  In this case, Plaintiff's Complaint clearly states that he has exhausted

administrative remedies and contains no indication to the contrary.  (Compl. at 9.)  Therefore,

the court finds that it is not clear from the face of the Complaint that Plaintiff failed to exhaust

available administrative remedies.  *See Powell v. Wilner*, 2009 WL 840756, at *7 (D. Colo.

2009).

Moreover, Defendants' Motion is silent as to the applicable prison grievance procedure

and the boundaries of proper exhaustion in these circumstances.  Defendants have failed to

provide the court with a standard by which to evaluate exhaustion as a basis for dismissal.

Instead, Defendants rely on exhibits attached to their motion without citing the legal authority

under which this court would be allowed to consider them on a Rule 12(b)(6) motion to dismiss.

Defendants' arguments present issues of fact which a court is precluded from determining on a

Rule 12(b)(6) motion to dismiss.  *See Baxter v. Samples*, 2009 WL 2242252, at *7–8 (D. Colo.

2009).

## 2.      *Personal Participation*

"A *Bivens* action requires an allegation of personal participation, demonstrating how each

defendant caused the deprivation of a federal right."  *Antelope v. U.S.*, 2009 WL 473655, at *6

(D. Colo. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  There must be an

affirmative link between the alleged constitutional violation and each defendant's participation,

control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055

(10th Cir. 1993).

Plaintiff alleges that Defendants Wilner and Gruders denied several of his requests—one

made in person in November 2008—for permission to gather with other inmates in order to

practice the Eckankar religion.  (Compl. at 5–6.)  Plaintiff claims "the named defendants have

repeated[ly] rejected [his] request[s] that a qualified Eckankar Spiritual leader be . . . allowed to

lead the group of inmates in the Eckankar religion at FCI."  (*Id.* at 7.)  Plaintiff's Complaint does

allege personal participation by Defendants Wilner and Gruders in the alleged constitutional

violations, and therefore, the Motion is properly denied on this basis.

**3.     *Sovereign Immunity***

Defendants contend that this court lacks subject matter jurisdiction over Plaintiff's

official capacity claims.  In *Bivens*, 403 U.S. at 388, the Supreme Court recognized "an implied

private right of action for damages against federal officers alleged to have violated a citizen's

constitutional rights."  *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  "The prisoner

may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."  *Id.*;

*See Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (claim for damages against a

federal defendant in his official capacity is treated as a claim against the United States).

"[A] *Bivens* claim lies against the federal official in his individual capacity—not . . .

against officials in their official capacity."  *Simmat v. United States Bureau of Prisons*, 413 F.3d

1225, 1231 (10th Cir. 2005).  "A suit for damages against a federal agent in his official capacity

would be barred by sovereign immunity, unless the government has waived sovereign

immunity."  *Pleasant v. Lovell*, 876 F.2d 787, 793 (10th Cir. 1989) (citing *Atkinson v. O'Neill*,

867 F.2d 589, 590 (10th Cir.1989) (sovereign immunity bars suit against IRS agents sued in their

official capacities)).  An official-capacity claim under *Bivens*

> contradicts the very nature of a *Bivens* action. There is no such animal as a *Bivens* suit
> against a public official tortfeasor in his or her official capacity.  Instead, any action that
> charges such an official with wrongdoing while operating in his or her official capacity as
> a United States agent operates as a claim against the United States.

*Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).  Sovereign immunity, therefore, bars

Plaintiff's claims for damages against Defendants Wilner and Gruders in their official capacities.

On the other hand, Congress has waived sovereign immunity in most suits for

nonmonetary relief:

> An action in a court of the United States seeking relief other than money damages and
> stating a claim that . . . an officer or employee thereof acted or failed to act in an official
> capacity . . . shall not be dismissed nor relief therein be denied on the ground that it is
> against the United States . . .

*Simmat,* 413 F.3d at 1233 (quoting 5 U.S.C. § 702).  The Tenth Circuit has described the

Administrative Procedure Act, 5 U.S.C. § 702, as "a general waiver of the government's

sovereign immunity from injunctive relief."  *United States v. Murdock Mach. & Engr. Co.*, 81

F.3d 922, 930 n. 8 (10th Cir. 1996); *see Simmat,* 413 F.3d at 1233. "This waiver is not limited to

suits under the Administrative Procedure Act."  *Id.* (citing *Chamber of Commerce v. Reich*, 74

F.3d 1322, 1329 (D.C. Cir. 1996) ("The [Administrative Procedure Act's] waiver of sovereign

immunity applies to any suit whether under the [Administrative Procedure Act] or not.")).

Sovereign immunity is, therefore, not a bar to Plaintiff's claims for injunctive relief against

Defendants Wilner and Gruders in their official capacities.

**4.**      ***Qualified Immunity***

Qualified immunity shields government officials sued in their individual capacities from

liability for civil damages provided their conduct when committed did not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When analyzing the issue of qualified

immunity, the court must determine (1) whether the plaintiff has sufficiently alleged violation of

a statutory or constitutional right; and (2) whether the right was clearly established at the time of

the violation.  *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).  Courts are permitted to exercise

their discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first.  *Id.* at 818.  The plaintiff bears a heavy two-part burden in establishing that the

defendant violated clearly established law.  *Teague v. Overton*, 15 F. App'x 597, 600 (10th Cir.

2001).  "When a defendant asserts the defense of qualified immunity, the burden shifts to the

plaintiff to overcome the asserted immunity."  *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir.

2006) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

Plaintiff has failed to show that his alleged right to gather in a specific location in the

prison with other Eckankar follower-inmates or to have a Spiritual Leader preside over such

gatherings was clearly established at the time of the alleged violations.  In fact, this court has

failed to find a single case supporting or upholding such "rights" in connection with the practice

the Eckankar religion.  Therefore, the court finds that Defendants Wilner and Gruders are

entitled to qualified immunity on all Plaintiff's claims for damages against them in their

individual capacities.

**5.      First Amendment and RFRA**

The First Amendment to the United States Constitution provides, in relevant part, that

"Congress shall make no law respecting an establishment of religion, or prohibiting the free

13

exercise thereof . . . ." U.S. Const. amend. I.  "It is well-settled that '[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  However, such protections are not without reasonable limitations.  *Id.*  "The Supreme Court has cautioned that prison inmates are also subject to the 'necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  *Id.* (quoting *O'Lone,* 482 U.S. at 348).  Therefore, "the Court has held that 'a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests.'"  *Id.* (quoting *O'Lone,* 482 U.S. at 349).

"[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry."  *Id.*  "First, the prisoner-plaintiff must . . . show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.'"  *Id.* (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).  "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.'"  *Id.* (quoting *Boles*, 486 F.3d at 1182).  Courts then balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), to determine the reasonableness of the regulation, considering

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other

14

prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Id.* at 1219 (citing *Boles*, 486 F.3d at 1181).

Under the Religious Freedom Restoration Act ("RFRA"), "a plaintiff establishes a *prima facie* claim . . . by proving the following three elements: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion." *Kikumura*, 242 F.3d at 960. "Once a plaintiff establishes a *prima facie* claim under RFRA, the burden shifts to the government to demonstrate that 'application of the burden' to the claimant 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering that compelling governmental interest.'" *Id.* at 961–62 (citing 42 U.S.C. § 2000bb-1(b)).

In this case, Defendants dispute neither the sincerity of Plaintiff's beliefs, nor that gathering with other inmates and a Spiritual Leader in a specific location at FCI to practice the Eckankar faith constitutes religious exercise. (Mot. at 8.) Therefore, the court restricts its analysis to whether Plaintiff has alleged the imposition of a substantial burden on his religious exercise.

### A.   *Substantial Burden*

The Supreme Court has defined a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand," *Sherbert v.*

15

*Verner*, 374 U.S. 398, 404 (1963).  The definition of substantial burden does not include

"incidental effects of government programs, which may make it more difficult to practice certain

religions but which have no tendency to coerce individuals into acting contrary to their religious

beliefs." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450–51 (1988).

"A prisoner may be inconvenienced in the practice of his or her faith so long as the

governmental conduct does not prohibit the prisoner from 'participating in the mandates of his

religion.'"  *Grady v. Holmes*, 2008 WL 3539274, at *4 (D. Colo. 2008) (quoting *Freeman v.

Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997)).

        The Tenth Circuit's definition of a "substantial burden" pursuant to the RFRA is almost

identical to that in a First Amendment claim, requiring a showing that the regulation (1)

significantly inhibits or constrains Plaintiff's religious conduct or expression, (2) meaningfully

curtails Plaintiff's ability to express adherence to his faith, or (3) denies Plaintiff reasonable

opportunity to engage in fundamental religious activities.  *Echtinaw v. Lappin*, 2009 WL

604131, at *11 (D. Kan. 2009) (citing *Wares v. Simmons*, 524 F. Supp. 2d 1313, 1320 (D. Kan.

2009)).  Indeed, "[t]he Tenth Circuit uses the same 'substantial burden' test to evaluate RFRA

and First Amendment free exercise prisoner claims." *Id.* (citing *Wares*, 524 F. Supp. 2d at 1320

n. 9).

        In Claim One, Plaintiff contends the Defendants' denial of his requests to gather with

other inmates to practice his faith violated his First Amendment rights.  (Compl. at 4–5.)

Plaintiff insists that the primary focus of his religion is group meditation (*id.*), and that religious

practice in a group setting is "mandated" by his religion (*id.* at 5).  In Claim Two, Plaintiff

16

claims the Defendants' denial of his requests for a specific location within FCI in which to practice his faith violated his First Amendment rights.  (*Id*. at 4–5.)  Plaintiff claims that his religion "cannot be practiced by a sole practitioner" (*id*. at 5), but nevertheless, "[he] and his religious beliefs[] have been restricted to his individual cell at FCI-Florence."  (*Id.*)  In Claim Three, Plaintiff alleges that a Spiritual Leader is required by his faith and that access to such a Leader was denied to him by Defendants Wilner and Gruders.  (*See Id*. at 7.)  Defendants contend that Plaintiff may request "pastoral support."  (Mot. at 12.)  However, Defendants fail to explain how the availability of "pastoral support" mitigates the denial of an Eckankar Spiritual Leader so as to impose a less-than-substantial burden on Plaintiff's free exercise.

Presuming Plaintiff's factual allegations about the precepts of his religion as true as the court must at this stage, *Hall*, 935 F.2d at 1198, the court finds that Plaintiff has sufficiently alleged that Defendants Wilner and Gruders imposed a substantial burden on the free exercise of his religion in Claims One, Two and Three.  Therefore, as Plaintiff has made a *prima facie* claim under the First Amendment and RFRA, the court now turns to the question of whether Defendants have met their burden as to either claim.

### B.  *Defendants' Burden*

Defendants contend the "[BOP] has security and safety concerns about allowing a group Eckankar practice because the group engages in initiation practices."  (Mot. at 11.)  The meaning of "initiation practices" is not explained.  It is well-settled law that prison security is a compelling governmental interest.  *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005) ("It bears repetition . . . that prison security is a compelling state interest, and that deference is due to

17

institutional officials' expertise in this area."); *Crocker v. Durkin*, 53 F. App'x 503, 505 (10th Cir. 2002) (In the context of evaluating prisoner RFRA claims, the court recognized that "the maintenance of safety and order is a compelling governmental interest") (citing *Kikumura*, 242 F.3d at 962); *see Pell v. Procunier*, 417 U.S. 817, 823 (1974) ("central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves").  It follows, therefore, that prison security is necessarily also a legitimate penological interest.

However, Defendants have failed to address the reasonableness of the prohibition on Eckankar group meditation led by a Spiritual Leader according to the four *Turner v. Safely* factors.  482 U.S. at 89–91.  Defendants' Motion and Reply do not speak to the "rational connection"  between the prohibition on Eckankar group meditation led by a Spiritual Leader and the legitimate penological interest of prison security.  The pleadings are also silent as to how this prohibition promotes prison security, the impact accommodating Plaintiff's requests may have, and whether any policy alternatives exist to do so at *de minimis* cost to the prison. Defendants' Motion also fails to address whether the decision to prohibit Eckankar group meditation with a Spiritual Leader is the least restrictive means of furthering the compelling interest of prison security.  Indeed, such a showing would likely require extensive evidentiary material which has not been presented to the court and could not be considered on a Rule 12(b)(6) motion to dismiss in any event.  Consequently, Defendants have failed to meet their burden of showing that Plaintiff has failed to state a claim under either the First Amendment or the RFRA in Claims One, Two and Three.

18

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss" (Doc. No. 17) be **GRANTED IN PART** as follows:

1.      All claims against Defendants Wilner and Gruders, in their individual capacities, be DISMISSED with prejudice; and

2.      All claims for compensatory damages against Defendants Wilner and Gruders, in their official capacities, be DISMISSED with prejudice.

The court further

**RECOMMENDS** that "Defendants' Motion to Dismiss" (Doc. No. 17) be **DENIED** to the extent the Motion seeks dismissal of Claims One, Two and Three for injunctive relief under the First Amendment and the RFRA against Defendants Wilner and Gruders, in their official capacities.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As*

19

*2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 25th day of August, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge